IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
AT JACKSON

Assigned on Briefs December 1, 2009

## UVAUTAI BROOKS v. STATE OF TENNESSEE

**Direct Appeal from the Criminal Court for Shelby County**
**No. 05-01284    Paula Skahan, Judge**

---

**No. W2009-00682-CCA-R3-PC  - Filed May 18, 2010**

---

A Shelby County jury convicted the petitioner, Uvautai Brooks, of one count of aggravated robbery and three counts of facilitation of aggravated robbery. The trial court sentenced the petitioner, as a Standard Range I Offender, to serve an effective ten-year sentence in the Tennessee Department of Correction. The petitioner filed for post-conviction relief alleging the ineffective assistance of counsel. The post-conviction court denied the petitioner's claim, and the petitioner appeals the decision of the court. After reviewing the record, the parties' briefs, and the applicable law, we affirm the decision of the post-conviction court.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Criminal Court Affirmed**

J.C. McLin, J., delivered the opinion of the court, in which Thomas T. Woodall and John Everett Williams, JJ., joined.

Lance R. Chism, Memphis, Tennessee, for the appellant, Uvautai Brooks.

Robert E. Cooper, Jr., Attorney General and Reporter; Clarence E. Lutz, Assistant Attorney General; William L. Gibbons, District Attorney General; and Bryan Davis, Assistant District Attorney General, for the appellee, State of Tennessee.

## OPINION

### Background

A Shelby County grand jury indicted the petitioner, Uvautai Brooks, on four counts of aggravated robbery. The following is a summary of the facts from the petitioner's jury trial held June 22 through June 24, 2005.

At approximately 6:00 p.m. Saturday, April 26, 2003, four men robbed Sound FX Car Audio ("Sound FX"). During the robbery the owner of Sound FX, Douglass Scott Hines,

was in the business along with Jeffrey Brian Matthews and David Stimpson. Mr. Hines and Mr. Mathews identified the petitioner, in a photographic lineup and in the courtroom, as one of the men who committed the robbery. According to Mr. Hines and Mr. Mathews, the petitioner appeared to be the leader of the robbers. The police did not show Mr. Stimpson a photographic lineup; however, while testifying during the petitioner's trial, he identified the petitioner as one of the men involved in the robbery.

Officer Willie Sanders, with the Memphis Police Department, was the first officer to respond to the robbery at Sound FX. When he arrived, the men at the store informed him that the four had robbed them. Officer Hope Smith, a crime scene officer with the Memphis Police Department, also went to the scene of the robbery. While she was at the scene, Officer Smith took photographs, processed the crime scene, and tagged evidence, but she was unable to retrieve any usable fingerprints.

Sergeant Joseph Pearlman was the investigator assigned to the Sound FX robbery. Sergeant Pearlman testified that he developed the petitioner as a suspect as the result of a Crime Stopper's tip. On April 24, 2003, someone passed counterfeit money at Sound FX, and the United States Treasury Department's Secret Service had a video still of the person who had passed the counterfeit money. Sergeant Pearlman compared the petitioner's mug shot to the video still and decided to include the petitioner's picture in the photographic lineup that he showed to Mr. Hines and Mr. Mathews. On May 19, 2003, Officer Donald Wolfe, with the Shelby County Sheriff's Department, showed a photospread to Mr. Hines, which included the petitioner's picture.

Iran Westbrooks testified for the defendant. Mr. Westbrooks was involved with the Sound FX robbery and had pleaded guilty to aggravated robbery. He testified that the petitioner was not involved in the Sound FX robbery; however, he admitted that at his guilty plea hearing he stated, under oath, that the petitioner was involved in the robbery. Dwight Alston, Jr., the petitioner's roommate at the time of the robbery, testified that "the robbery was supposed to have taken place" on April 29, 2003. Mr. Alston said that the petitioner could not have been involved with the robbery because when he arrived home between 6:00 and 6:15 p.m. on April 29, 2003[1], the petitioner was at their home. DuJuan Taylor testified that he was also the petitioner's roommate at the time of the robbery. According to Mr. Taylor, when he arrived home on April 26, 2003, around 6:30 p.m. the petitioner was there.

---

[1] Although the robbery occurred on April 26, 2003, Mr. Alston maintained that the petitioner could not have been involved because he was with the petitioner on April 29, 2003, around 6:00 p.m. Defense counsel and the prosecutor asked him if he was certain about the date multiple times, and he stated that he was certain about the date and time. Mr. Alston testified that there was "[n]o doubt in his mind about the date. The 29th of April, 2003."

He denied telling Sergeant Pearlman that, because he was in the hospital on April 26, 2003, he did not know where the petitioner was.

The petitioner testified in his own defense and stated that he was in Sound FX on April 24, 2003, to purchase merchandise, and he did not go back to the store after that day. He said that he was home all day Saturday, April 26, 2003, the day that the robbery occurred. The petitioner testified that he did not pass counterfeit money at Sound FX or rob Sound FX.

After hearing the evidence, the jury convicted the petitioner of one count of aggravated robbery and three counts of facilitation of aggravated robbery. The petitioner did not directly appeal his convictions or sentences; however, on July 25, 2007, the petitioner timely filed a petition for post-conviction relief. On April 21, 2008, the petitioner's appointed counsel amended the petition. On November 26, 2008, the post-conviction court held an evidentiary hearing to determine the merits of the petitioner's claim that he received the ineffective assistance of counsel.

At the post-conviction hearing, the petitioner's trial counsel testified that during the trial, he did not find that the state asking Sergeant Pearlman how he developed the petitioner as a suspect was objectionable. Trial counsel stated that he did not object to that question because he "didn't see anything to object to [sic]." He further stated that he did not think that the question elicited hearsay or prejudicial testimony. Trial counsel said that he did not think that Sergeant Pearlman's mention of the Crime Stopper's tip was objectionable. Because trial counsel did not find the statement objectionable, he did not make an objection or ask for a mistrial. Trial counsel stated that, based on his experience, he did not believe the statement was hearsay. He said that when he had made objections to a witness testifying about receiving a tip in the past, the courts overruled his objections. Trial counsel explained that "in the past, it has been ruled that you cannot say what you heard[,] but you can state what you did as a result of that information." Trial counsel stated that he did not believe that the state offered the testimony for the truth of the matter asserted. Trial counsel also did not believe that Sergeant Pearlman's statement was a violation of the right to confrontation of witnesses.

Trial counsel testified that, at the time of trial, he was unaware of United States Supreme Court cases that established new tests to determine whether hearsay evidence is testimonial. Trial counsel stated that he was aware of Tennessee law, which states that testimony that a party does not offer for the truth of the matter is not hearsay. Trial counsel believed that the state offered the testimony to show why Sergeant Pearlman developed the petitioner as a suspect, and thus, it was not hearsay. According to trial counsel, the probative value of the testimony was to show why authorities thought the petitioner was involved in the robbery. Trial counsel stated that the petitioner wanted the jury to hear testimony about

how authorities developed him as a suspect because the petitioner claimed that he became a suspect based on their belief that he had passed the counterfeit money.

Trial counsel reviewed the discovery materials and was aware that someone had passed counterfeit money in the store two days before the robbery. Trial counsel stated that he did not file a motion in limine to prohibit the state from mentioning the counterfeit money

> because that was part of [the petitioner's] defense. That the only reason that the store owners or the people at the store said it was him was because they had seen him in there earlier and when he was accused of passing counterfeit money. And part of the Defense was that [they did not] recognize him from this particular incident. [They recognized] him from before when [they] got the pictures and stuff saying that he had passed the counterfeit money.

Trial counsel did not feel that the testimony regarding the counterfeit money was prejudicial. Trial counsel was aware that pursuant to Tennessee Rule of Evidence 404 (b) prior bad acts are generally inadmissable; however, trial counsel did not view the counterfeit money testimony as a prior bad act because a jury had not convicted the petitioner of the crime.

Trial counsel testified that he filed a motion to instruct the jury regarding possible penalties and lesser included offenses. He stated that he did not specifically ask, in writing, for an instruction to include aggravated assault as a lesser included offense. Trial counsel did not make such a request because he "didn't see aggravated assault as a lesser included of aggravated robbery."

Trial counsel stated that he called Mr. Westbrooks as a witness at the petitioner's request. Trial counsel had met with Mr. Westbrooks, and he knew how Mr. Westbrooks would testify before he called him as a witness. Trial counsel did not think that calling Mr. Westbrooks was wise, and he stated on the record that the petitioner was going against his advice. Trial counsel questioned the petitioner, in front of the jury, about his decision to call Mr. Westbrooks as a witness "so the jury would know that he made this decision and hopefully . . . they would realize that [Mr. Westbrooks] didn't know what he was talking about." He did not want to present Mr. Westbrooks as a witness because Mr. Westbrooks had already testified under oath that the petitioner was involved, and if he gave contrary testimony during the trial, it would damage his credibility. At the time of trial, counsel was unaware that he, rather than the defendant, decided which witnesses to call. He became aware that it was his decision after the federal court sanctioned him in another case for following his client's wishes although he did not believe them to be in the client's best interest. He stated that if he could do the trial again, he would not call Mr. Westbrooks as a witness.

Trial counsel did not remember calling Mr. Alston as an alibi witness. He did not recall whether he knew that Mr. Alston would testify that the robbery happened on April 29. He agreed that it was possible that he called Mr. Alston as a witness without knowing on which date he would say the robbery occurred. Trial counsel spoke to Mr. Alston for maybe "a few minutes" outside the courtroom before the trial. He stated that he "[p]robably" called Mr. Alston as a witness at the petitioner's request. Trial counsel asked for an investigator on June 20, 2005, which was two days before the trial began. He stated that he did not ask for an investigator sooner because he "was probably of the opinion that [they] didn't need one . . . ."

When asked whether he found anything objectionable about Sergeant Pearlman testifying that after he received the Crime Stopper's tip he pulled the video from the counterfeit investigation and matched it to the petitioner's jail photo, trial counsel answered, "No." Likewise, he did not find anything objectionable when the state said that Sergeant Pearlman's copy of the photospread was different from the one the state introduced into evidence or when the state asked Sergeant Pearlman about the booking numbers listed on the photospread. Trial counsel did not remember his reasoning for asking Sergeant Pearlman how he put the photospread together, and he did not see any possible prejudicial effect to his case because of the question. He thought that he might have asked Sergeant Pearlman about how he put the photospread together "to make sure that the pictures were all similar in all respects." Trial counsel said that he did not find it objectionable when the state mentioned in its closing argument that Mr. Hines came to Tennessee from California and postponed an international trip to be present for the trial.

On cross-examination, trial counsel stated that he had been practicing law, mainly criminal defense, for about nineteen years. He stated that the petitioner's case was not unusual, and he consulted with the petitioner about trial strategy. He said that showing that the petitioner was in the store two days before the robbery with counterfeit money was a "major part" of the petitioner's strategy, and he discussed the ramifications of that strategy with the petitioner. Trial counsel disagreed with the petitioner's wishes regarding strategy, but he went forward with them because he thought he was supposed to go along with what his client wanted to do. He told the petitioner that he disagreed with his strategy and advised him of the consequences of pursuing such a strategy. Likewise, he advised the petitioner about the consequences of calling Mr. Westbrooks as a witness. Trial counsel stated that he gave the petitioner "the full value of [his] experience and expertise" and did not feel that his performance was deficient.

Following the hearing, the post-conviction court entered an order denying the petitioner's request for post-conviction relief. The petitioner timely appealed the judgment of the post-conviction court.

## Analysis

The petitioner raised several issues in his petition for post-conviction relief and presented several issues during the hearing on the petition for post-conviction relief. However, on appeal, the petitioner only asserts that trial counsel was ineffective for failing to object and ask for a mistrial when Sergeant Pearlman testified that a Crime Stopper's tip implicated the petitioner as a suspect in the robbery. The state responds that trial counsel made a tactical decision not to object to the testimony regarding the Crime Stopper's tip and that counsel's failure to object did not prejudice the petitioner. We agree with the state.

In order for a petitioner to succeed on a post-conviction claim, the petitioner must prove the allegations of fact set forth in his petition by clear and convincing evidence. Tenn. Code Ann. § 40-30-110(f). On appeal, this court is required to affirm the post-conviction court's findings unless the petitioner proves that the evidence preponderates against those findings. *State v. Burns*, 6 S.W.3d 453, 461 (Tenn. 1999). Our review of the post-conviction court's factual findings, such as findings concerning the credibility of witnesses and the weight and value given their testimony, is *de novo* with a presumption that the findings are correct. *See id.* Our review of the post-conviction court's legal conclusions and application of law to facts is *de novo* without a presumption of correctness. *Fields v. State*, 40 S.W.3d 450, 457-58 (Tenn. 2001).

To establish the ineffective assistance of counsel, the petitioner bears the burden of proving that (1) counsel's performance was deficient and (2) the deficient performance prejudiced the defense rendering the outcome unreliable or fundamentally unfair. *See Strickland v. Washington*, 466 U.S. 668, 687 (1984); *see also Arnold v. State*, 143 S.W.3d 784, 787 (Tenn. 2004). Deficient performance is shown if counsel's conduct fell below an objective standard of reasonableness under prevailing professional standards. *Strickland*, 466 U.S. at 688; *see also Baxter v. Rose*, 523 S.W.2d 930, 936 (Tenn. 1975) (establishing that representation should be within the range of competence demanded of attorneys in criminal cases). Prejudice is shown if, but for counsel's unprofessional errors, there is a reasonable probability that the outcome of the proceeding would have been different. *Strickland*, 466 U.S. at 694. A fair assessment of counsel's performance "requires that every effort be made to eliminate the distorting effects of hindsight, to reconstruct the circumstances of counsel's challenged conduct, and to evaluate the conduct from counsel's perspective at the time." *Id*. at 689; *see also Nichols v. State*, 90 S.W.3d 576, 587 (Tenn. 2002). The fact that a particular strategy or tactical decision failed does not by itself establish ineffective assistance of counsel. *Goad v. State*, 938 S.W.2d 363, 369 (Tenn. 1996). However, deference is given to strategy and tactical decisions only if the decisions are informed ones based upon adequate preparation. *Id*. Both deficient performance and prejudice must be established to prove ineffective assistance of counsel. *Strickland*, 466 U.S. at 697; *see also Goad*, 938 S.W.2d

at 370. If either element of ineffective assistance of counsel has not been established, a court need not address the other element. *Strickland*, 466 U.S. at 697.

The petitioner alleges that the testimony regarding the Crime Stopper's tip was hearsay evidence and a violation of the petitioner's constitutional right to confront the witnesses against him, and thus, trial counsel should have objected to the testimony. The post-conviction court accredited trial counsel's testimony and found that trial counsel's decision not to object to Officer Pearlman's testimony was a tactical decision based on his belief that the state was not offering the testimony for the truth of the matter asserted, and thus, was not hearsay. The post-conviction court further found that the petitioner did not show how the outcome would have been different had counsel objected. Regarding the testimony violating the petitioner's right to confront witnesses, the post-conviction court likewise accredited trial counsel's testimony that he believed the statement was not testimony against the petitioner, and the post-conviction court found that trial counsel's decision not to object was "within the range of reasonable professional assistance." The post-conviction court found that counsel's tactical decision not to object to the testimony regarding the Crime Stopper's tip was reasonable, and the evidence does not preponderate against the findings of the post-conviction court. Accordingly, we conclude that the petitioner has not carried his burden of proving both prongs of the ineffective assistance test and is not entitled to relief.

_____
J.C. McLIN, JUDGE